# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| NAKITA NICOLE HUTCHINSON and SHUNTA LASHUN SMITH, individually and as beneficiaries of life insurance policies issued to BUILDING MATERIALS CORPORATION OF AMERICA d/b/a GAF MATERIALS CORPORATION by HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Plaintiffs, v. RELIASTAR LIFE INSURANCE COMPANY; BUILDING MATERIALS CORPORATION OF AMERICA d/b/a GAF MATERIALS CORPORATION; and VIRGINIA WILSON a/k/a VIRGINIA DARDEN a/k/a VIRGINIA HENDERSON, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 3:06-CV-1122-B ECF |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The District Court referred the March 31, 2007 Motion for Summary Judgment of ReliaStar Life Insurance Company ("ReliaStar") to the United States Magistrate Judge for findings, conclusions, and recommendation. The deadline for filing a response expired, and Plaintiffs failed to respond.

## Background

Plaintiffs Nakita Hutchinson ("Hutchinson") and Shunta Smith ("Smith") are suing to recover life insurance benefits on their father's life insurance policy. Their father, Mr. Lonnell Henderson ("Mr. Henderson") died on August 4, 2005. Hutchinson and Smith allege that their father told them that they were the named beneficiaries of the life insurance provided by his

employer's employee welfare benefit plan (the "Plan"). Hutchinson and Smith claim that their stepmother, Mrs. Virginia Henderson ("Mrs. Henderson"), exerted undue influence upon their father when he was weakened by his illness and caused him to remove them as the beneficiaries of his life insurance. Mrs. Henderson alleges that she is entitled to the life insurance benefits as the named beneficiary under the Plan. ReliaStar acknowledges that Mr. Henderson's basic life insurance benefits are due and payable and stands ready, willing and able to make payment. However, although Plaintiffs have never filed a claim with ReliaStar for Mr. Henderson's life insurance benefits, they claim the benefits in this lawsuit. Therefore, ReliaStar contends that it is unable to pay either Plaintiffs or Mrs. Henderson without subjecting itself to multiple liability.

In this lawsuit, Plaintiffs sue ReliaStar for extra-contractual damages for alleged violations of the Texas Insurance Code, negligence, and breach of fiduciary duties. ReliaStar claims that all of Plaintiffs' claims against it are preempted by ERISA. ReliaStar requests that the Court: (1) grant its motion for summary judgment; (2) permit ReliaStar to deposit the life insurance proceeds into the Court's Registry for distribution to whomever the Court determines to be the rightful beneficiary or beneficiaries; (3) dismiss Plaintiffs' claims against ReliaStar with prejudice; (4) award ReliaStar its court costs; and (5) dismiss it from this action.

## Standard of Review

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts will preclude the court's granting summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The burden is on the movant to prove that no genuine issue of material fact exists.

*Latimer v. Smithkline & French Lab.,* 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support his motion with evidence negating the non-movant's case. Rather, the movant may satisfy his burden by pointing to the absence of evidence to support the non-movant's case. *Little,* 37 F.3d at 1075. Once the movant meets his burden, the non-movant must show that summary judgement is not appropriate. *Little,* 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). "[A properly supported summary judgment motion] requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. *See* FED. R. CIV. P. 56(e). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr,* 200 F.3d 291, 302 (5th Cir. 2000); *Anderson,* 477 U.S. at 248.

Plaintiffs' lack of response to ReliaStar's Motion means that Plaintiffs have not designated specific facts showing that there is a genuine issue for trial. They are relegated to their unsworn pleadings, which are not summary judgment evidence. *Bookman v. Shubzda,* 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assoc.,* 929 F.2d 160, 165 (5th Cir. 1991)). Although Plaintiffs' failure to respond does not permit the Court to enter a "default" summary judgment, the Court is allowed to accept the evidence presented by ReliaStar as undisputed. *Eversley*

*v. Mbank Dallas,* 843 F.2d 172, 174 (5th Cir. 1988); *see also Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998) (holding a party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports her claim). Accordingly, this Court accepts ReliaStar's evidentiary assertions as undisputed. *See Ragas,* 136 F.3d at 458 (noting the court does not have the duty to sift through the record in search of evidence to support a party's opposition to summary judgment); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.17 (5th Cir. 1992) (same).

### Statement of Undisputed Material Facts

### Insurance Policy

Mr. Henderson's employer, GAF Materials Corp. ("GAF"), maintained the Plan to provide its eligible employees with benefits for medical services, prescription drugs, dental services, vision services, and life insurance. (Appendix ("App.") at 100). ReliaStar issued group policy number 62520-5GAT (the "Group Policy") to GAF to provide the life insurance benefits for its Plan. *Id.* at 9-35. The Plan, through the Group Policy, provided eligible employees basic life insurance and accidental death & dismemberment ("AD&D") benefits. *Id.* However, AD&D benefits are not payable when death is caused, directly or indirectly, by any physical or mental illness, as is the situation with Mr. Henderson's death. *Id.* at 20. GAF "self-administered" the life insurance for the Plan. *Id.* at 5, ¶ 5. GAF was responsible for certain administrative functions, including maintaining the records of covered employees, the amount of each employee's coverage, and the beneficiary designation for each employee. *Id.* at ¶ 7. When a covered employee died, GAF was required to complete an Employer's Statement in order to provide ReliaStar with the name of the employee, the amount of coverage, and the beneficiary. *Id.* at ¶10. GAF's responsibilities for administering the

4

life insurance are outlined in GAF's Self-Administration Manual. *Id*. at 36-97. GAF also paid the premiums for its employees who were eligible for coverage. *Id*. at 2, ¶4.

Mr. Henderson began working for GAF on March 5, 1990. *Id*. at 98. Mr. Henderson's coverage under the Group Policy became effective on January 1, 2004. *Id*. Mr. Henderson was insured for $24,000 in basic life insurance and $24,000 in AD&D insurance. *Id*. at 6, ¶¶ 12–13.

Mr. Henderson died in Methodist Central Hospital on August 4, 2005. *Id*. at 101. D. L. Solanki, MD, certified Mr. Henderson's death as "Natural" with the immediate cause of death being "lung cancer with metastases" and other significant conditions contributing to death being "septicemia" and "mechanical bowel obstruction." *Id*. As a result of Mr. Henderson's death, $24,000 in basic life insurance became due and payable. *Id*. at 6, ¶¶ 12-13.

### Claim

On March 21, 2006, Mrs. Henderson completed a claim for $24,000 in basic life insurance benefits resulting from Mr. Henderson's death. *Id*. at 98-99. Mrs. Henderson listed her relationship to Mr. Henderson as "wife" and stated that she was the beneficiary of Mr. Henderson's coverage. *Id*. She did not make a claim for AD&D benefits. *Id*. As part of her claim, Mrs. Henderson executed and submitted an "Affidavit About Heirs of Decedent." *Id*. at 102. She listed herself as Mr. Henderson's surviving spouse and did not list any children. *Id*. GAF's Benefits Specialist, Barbara Brig, certified the information provided by GAF in the Death Claim and forwarded the claim to ReliaStar on March 31, 2006. *Id*. at 6, ¶¶ 12, 16; 103. ReliaStar paid Mrs. Henderson's claim under the Group Policy on April 12, 2006, by placing the proceeds into a Personal Transition Account in her name. *Id*. at 7, ¶18; 104. However, shortly thereafter ReliaStar was informed that Mr. Henderson's daughters, Hutchinson and Smith, had filed a lawsuit in August, 2005, in the

5

District Court of Dallas County, Texas, seeking the same life insurance benefits. *Id*. at 105-15. ReliaStar was not a party to that lawsuit and was not served with a summons or complaint. *Id*. Neither Hutchinson nor Smith had filed a claim for the Group Policy proceeds with ReliaStar. *Id*. at 8, ¶20.

Reliastar was faced with competing claims to the life insurance benefits which potentially subjected ReliaStar to multiple liability if it paid the benefits either to Mrs. Henderson or to Hutchinson and Smith. As a result, ReliaStar placed a hold on the Personal Transition Account and notified Mrs. Henderson. *Id*. at 8, ¶22; 104. ReliaStar decided to file an interpleader action.

## Litigation

Before ReliaStar could initiate an interpleader action, Hutchinson and Smith filed a "First Amended Original Petition for Declaratory Relief, Permanent Injunction, and Request for Disclosures" ("Am. Pet.") in the District Court, Dallas County, Texas, adding ReliaStar as a Defendant and continuing to name Mrs. Henderson and GAF as defendants. Plaintiffs allege that Mr. Henderson repeatedly told them that they were the beneficiaries of his life insurance. Am. Pet. at 5. They further allege that two weeks before Mr. Henderson's death, Mrs. Henderson "imposed her will" upon Mr. Henderson and unduly influenced him to remove them as beneficiaries to his life insurance. *Id*. at 6. Plaintiffs ask the Court to determine whether Mr. Henderson was of sound mind, knew the extent of his estate and the objects of his bounty, and understood the legal effects of his actions, and whether Mrs. Henderson exercised undue influence over him with regard to his life insurance benefits. *Id*. at 7. None of these allegations involve ReliaStar. However, Plaintiffs also seek extra-contractual damages and attorney's fees against ReliaStar for improper handling of their claim including allegations of negligence, willful and wanton conduct, breach of fiduciary

6

duties, disregard for the rights of Plaintiffs, and irreparable and incalculable damages to Plaintiffs' rights as contractual beneficiaries. *Id*. at 7-8. Plaintiffs presumably rely upon Texas common law and the Texas Unfair Claim Settlement Practices Act, TEXAS INS. CODE § 542.001 et seq. *Id*. at 8. Defendants removed Plaintiffs' action to this Court on June 23, 2006, because Plaintiffs' allegations arise from an employee welfare benefit plan that is regulated under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Notice of Removal at 3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and removal is proper pursuant to the provisions of 28 U.S.C. § 1441. *Id*.

ReliaStar answered Plaintiffs' Amended Petition alleging, among other defenses, that Plaintiffs' state law claims are preempted by ERISA; that it is a disinterested stakeholder in the matter; and that it is unable to pay the proceeds to any party without subjecting itself to multiple liability. ReliaStar's Answer at 5.

## Analysis

ERISA expressly "supersedes[s] any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 45 (1987). ERISA preempts state statutes, such as the Texas Insurance Code, that provide a private right of action for alleged improper handling of insurance claims. *Ramirez v. Inter-Continental Hotels*, 890 F.2d 760, 76-64 (5th Cir. 1989). Any claim which has a connection with or reference to an employee benefit plan is preempted by ERISA. *Pilot Life,* 481 U.S. at 45-46 ("the express preemption provisions of ERISA are deliberately expansive . . ."); *see also Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 96-97 (1983). Furthermore, because Congress used the phrase "relate to" in its broadest sense, the Supreme Court has "emphasized the preemption clause is not limited

7

to state laws specifically designed to affect employee benefit plans." *Pilot Life*, 481 U.S. at 47-48; *Shaw*, 463 U.S. at 98. A state law relates to "an employee benefit plan if it has a connection with or reference to such plan." *Rozzell v. Sec. Serv. Inc.*, 38 F.3d 819, 821 (5th Cir. 1994) *quoting Shaw*, 463 U.S. at 96-97. When the very essence of the claim is premised on the existence of an employee benefit plan, the claim "relates to the plan." *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1220 (5th Cir. 1992). If the claims could not be made if the plan ceased to exist, they are preempted by ERISA. *Id.*

ReliaStar contends that all of Plaintiffs' claims arise out of and relate to the GAF Plan and their attempt to secure benefits from it. It contends, therefore, that Plaintiff's state law claims are preempted by ERISA and should be dismissed with prejudice. To prove that Plaintiffs' claims against ReliaStar are preempted by ERISA, ReliaStar must show the existence of an employee welfare benefit plan as that term is defined by ERISA. *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 235 (5th Cir. 1995). ERISA defines an employee welfare benefit plan as: [A]ny plan, fund, or program which was . . . established or maintained by an employer. . . [and] established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, [or] death . . . . 29 U.S.C. § 1002(1).

Three prongs must be met to satisfy this definition. *McDonald*, 60 F.3d at 236. First, the Court must determine if a plan exists by looking to the surrounding circumstances to determine whether a reasonable person could ascertain: (1) the intended benefits, (2) a class of beneficiaries, (3) the source of financing, and (4) the procedures for receiving benefits. *Id*. The Plan Booklet contains a summary of the benefits available to employees, conversion rights, how to submit a claim,

and also a statement of an employee's rights under ERISA. (App. at 12-51). It also identifies the class of beneficiaries eligible for coverage by defining "employee" as well as outlining the eligibility requirements. *Id*. The Plan was fully financed by GAF which paid all premiums on behalf of its employees. *Id*. at 2, ¶ 4. Finally, the Group Policy Booklet describes the claim procedures for receiving benefits. *Id*. at 29. The GAF Plan meets the first prong. *McDonald,* 60 F.3d at 236.

The second prong that must be satisfied to establish the existence of an employee welfare plan under ERISA is that a plan must not fall within the scope of the Department of Labor's Safe Harbor provisions. *McDonald,* 60 F.3d at 236. A plan falls within the Safe Harbor provision if it: (1) involves no contribution by the employer; (2) involves voluntary participation; (3) limits the employer to collecting premiums and remitting them to the insurer, and permitting the insurer to advertise the plan; and (4) does not permit the employer to receive a profit from administering the plan. 29 C.F.R. § 2510.3-1(j). The evidence is uncontradicted that GAF paid the premiums on behalf of Mr. Henderson for his life insurance coverage. (App. at 2, ¶4). This fact alone is sufficient to prove that the GAF Plan does not qualify as a Safe Harbor and that the Plan meets the second prong. *McDonald*, 60 F.3d at 236 (court ended the safe harbor inquiry and held plan not a safe harbor after establishing that the employer paid the insurance premiums).

Finally, to satisfy the final prong for establishing the existence of an employee welfare benefit plan under ERISA, the plan must have been established or maintained to provide benefits to its employees. *McDonald*, 60 F.3d at 236. In the present case, GAF purchased life insurance for its employees, identified the employee-participants and distributed the enrollment and claim forms. (App. at 2, ¶ 4; 5-6, ¶¶ 5-12). These facts establish that the GAF Plan was established and maintained for the benefit of its employees. *McDonald*, 60 F.3d at 236. Consequently, the Court

9

finds that all the Plan meets all the criteria and is an employee welfare benefit plan under ERISA for the purposes of ERISA preemption analysis.

### Plaintiffs' Texas Ins. Code Claim

ERISA preempts state laws insofar as they may now or hereafter relate to any employee benefit plan. 29 U.S.C. § 1144(a); *Pilot Life*, 481 U.S. at 41. However, ERISA's savings clause allows state laws which regulate insurance, banking, or securities to survive ERISA preemption. 29 U.S.C. § 1144(b)(2)(A). A law "regulates insurance" under section 29 U.S.C. § 1144(b)(2)(A) if it is directed toward entities engaged in insurance, and substantially affects the risk pooling arrangement between the insurer and the insured. *Kentucky Assoc. of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003). Plaintiffs' Amended Petition seeks an injunction against interfering with Plaintiffs' recovery of damages from Defendants under "the principles of equity and statutes of this state including Texas Insurance Code penalties and attorney fees for not timely paying insurance claims to Plaintiffs." Am. Pet. at 8. Plaintiffs also seek 18% penalties and attorney's fees under the "Texas Insurance Code." *Id*. Plaintiffs fail to cite the specific provisions of the Code upon which they rely. Although it is unclear from the Amended Petition, this Court assumes that the claims are brought pursuant to the Unfair Claim Settlement Practices Act, Texas Ins. Code, § 542.001 *et seq*., specifically, § 542.060. Before 2003, these provisions were codified as V.A.T.S. Insurance Code articles 21.21 and 21.55, respectively. The Fifth Circuit Court of Appeals held that these provisions of the Texas Insurance Code are preempted by ERISA. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 277-78 (5th Cir. 2005) (claims under Texas Ins. Code articles 21.21 and 21.55 are preempted by ERISA); *Hogan v. Kraft Foods*, 969 F.2d 142, 144-45 (5th Cir. 1992) (*citing Ramirez*, 890 F.2d at 764 (5th Cir. 1989) (holding ERISA preempts statutes

such as Tex. Ins. Code provisions which provide an action for improper handling of insurance claims). Accordingly, the Court finds that Plaintiffs' claims under V.T.C.A., Insurance Code §§ 542.058, 542.060 are preempted by ERISA and should be dismissed with prejudice.

### **Plaintiffs' Claim For Breach of Fiduciary Duty**

Plaintiffs claim that Defendants are guilty of "breach of fiduciary duties." Am. Pet. at 7. ERISA provides that a civil action may be brought by a beneficiary for appropriate relief under § 1109. 29 U.S.C. § 1132(a)(2). The terms of 29 U.S.C. § 1109 provide that any fiduciary who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by ERISA shall be liable to make good to such plan any losses to the plan resulting from such breach and restore to such plan any profits as well as other equitable or remedial relief as a court may deem appropriate. 29 U.S.C. § 1109. In *Varity Corp. v. Howe*, the Supreme Court examined 29 U.S.C. § 1132 and observed that a plaintiff may bring a private action for breach of fiduciary duty only when no other remedy is available under ERISA. 29 U.S.C. § 1132; *Varity Corp. v. Howe*, 516 U.S. 489, 510-16 (1996); *Rhorer v. Raytheon Eng'rs & Consructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999). Although Plaintiffs seek "exemplary damages" for breach of fiduciary duties, the predominant claim in their action is for the recovery of the life insurance benefits under the Plan. Am. Pet. at 5-6, 8, 9. Consequently, their action is one for benefits from an employee welfare benefit plan pursuant to 29 U.S.C. § 1132 (a)(1)(B). That provision permits a civil action to be brought by a participant or beneficiary "to recover benefits due to him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B). Because § 1132 (a)(1)(B) provides Plaintiffs with an appropriate avenue for legal redress, they may not maintain a claim for breach of fiduciary duty. The District Court should grant summary judgment on this claim. *Rhorer*,

181 F.3d at 639. Both the United States Supreme Court and the Fifth Circuit Court of Appeals have held that a common law claim for breach of fiduciary duty is preempted by ERISA. *See, e.g., Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir. 1988) (claim of breach of fiduciary duty preempted because related to employee benefit plan and based upon state law of general application, not law regulating insurance) (citing *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41 (1987); *Metropolitan Life Ins. v. Taylor*, 481 U.S. 58 (1987)). Consequently, the District Court should grant ReliaStar's motion for summary judgment and dismiss with prejudice Plaintiffs' common law claim for breach of fiduciary duty because it is preempted by ERISA.

### Plaintiffs' Claim For Negligence

Plaintiffs allege that ReliaStar was negligent by assigning GAF administrative duties under the Plan. Am. Pet. at 2-3. Plaintiffs' negligence claim fails because it is preempted by ERISA. The Fifth Circuit has universally held that claims for negligence seeking payment of benefits from an employee welfare benefit plan are preempted by ERISA. *Hogan*, 969 F.2d at 144. Consequently, Plaintiffs' claim for negligence should be dismissed with prejudice.

### Plaintiffs' Claim for Extracontractual, Compensatory, and Punitive Damages

Plaintiffs seek payment of life insurance benefits under the Plan – an employee welfare benefit plan regulated by ERISA. Consequently, their exclusive remedy is provided by ERISA, in 29 U.S.C. § 1132(a)(1)(B). Extracontractual and punitive damages are not available under ERISA. "The plain language of [ERISA] does not mention recovery of extracontractual or punitive damages . . . . Had Congress intended to develop ERISA remedies additional to those specifically crafted, it has had ample opportunity to enact such legislation . . . . We are loathe to take this initiative on our own." *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 31 (5th Cir. 1993). Neither extracontractual

nor punitive damages are available to a Plaintiff as a remedy for any claim for benefits asserted under 29 U.S.C. § 1132(a)(1)(B). *Id. See, e.g., Hanson v. Cont'l Ins. Co.,* 940 F.2d 971, 979 (5th Cir. 1991). Accordingly, the District Court should grant ReliaStar's summary judgment motion and dismiss with prejudice Plaintiffs' prayer for extracontractual damages.

### **Interpleader**

Since an interpleader action under FED. R. CIV. P. 22 is like any ordinary civil action in federal court, jurisdiction may be founded upon diversity of citizenship or upon a federal question (*see* 7 Wright and Miller, Federal Practice and Procedure § 1703). As a defendant insurer faced with competing claimants to the proceeds of a life insurance policy, ReliaStar has standing under ERISA to claim interpleader. *See* FED.R.CIV.P. 22; *Phoenix Mut. Life Ins. Co. v. Adams,* 30 F.3d 554, 556 (4th Cir. 1994) (interpleader action under ERISA to determine proper recipient of proceeds of a death benefit); *Fox Valley & Vicinity Const. Workers Pension Fund v. Brown,* 879 F.2d 249, 250 (7th Cir. 1989) (same).[1] Resolution of the dispute will be governed either by the statutory language

---

[1] If the District Court should determine that the Group Policy does not qualify as an ERISA plan, then federal question jurisdiction would be lacking. In that case, Plaintiff's state law causes of action must be dismissed without prejudice for lack of diversity jurisdiction. Plaintiffs and Mrs. Henderson, a defendant, are citizens of Texas, and the amount in controversy does not exceed $75,000.

of ERISA or, if the court finds no answer there, by federal common law which, if not clear, may draw guidance from analogous state law. *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir. 1994).[2]

### Recommendation

Plaintiffs' seek to recover benefits from the Plan -- an employee welfare benefit plan as that term is defined by ERISA. Consequently, all of Plaintiffs' claims against ReliaStar are preempted by ERISA. Furthermore, ERISA bars Plaintiffs' attempts to recover extracontractual damages because such damages are not available under ERISA. The District Court should grant ReliaStar's Motion for Summary Judgment, permit ReliaStar to deposit the basic life insurance benefits payable as a result of Mr. Henderson's death into the Court Registry so that the Court may distribute those proceeds to whomever it determines to be the rightful beneficiary or beneficiaries. Further, the District Court should provide that ReliaStar may recover its court costs and dismiss Plaintiffs' claims against ReliaStar with prejudice.

SO RECOMMENDED, July 31, 2007.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[2] Faced with a circuit split on whether ERISA itself supplies the rule of law or whether a court must look to federal common law for the controlling principles, the Fifth Circuit Court of Appeals joins the majority on this issue by taking the broader approach. *Manning v. Hayes*, 212 F.3d 866, 870 (5th Cir. 2000). The Sixth Circuit Court of Appeals holds unambiguously that § 1104(d) of ERISA expressly requires that plan benefits be paid directly to the designated beneficiary and, further, bars any inconsistent federal common law permitting a broader inquiry. *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 425, 421 (6th Cir. 1997).

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).